**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| **THERESA LEYS,** ) | |
| ) | **Cause No. CV-10-07-BU-RFC** |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **EMPLOYERS INSURANCE** ) | |
| **COMPANY OF WAUSAU,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**I.   INTRODUCTION**

Plaintiff Teresa Lays filed the instant action to recover underinsured motorist benefits under an automobile insurance policy issued to her employer by Defendant Employers Insurance Company of Wausau ("Wausau"). Wausau also paid Leys worker's compensation benefits through a policy issued to her employer and claims a provision in the auto insurance policies alleviates it from paying Leys underinsured motorist benefits that it has already paid under its worker's compensation coverage. Pending before the Court are the parties' motions for

1

partial summary judgment relating to the enforceability of the worker's compensation offset provision. *Docs. 14 & 17.* Since the worker's compensation is authorized by Montana Code Ann. § 61-6-103(4) and the Montana Supreme Court has made clear that Montana law does not prohibit exclusions from non-mandatory coverages such as underinsured motorist coverage, Wausau's motion must be granted and Leys's motion must be denied.[1]

## II.   FACTUAL BACKGROUND[2]

On June 9, 2008, Leys was driving a motor vehicle in Belgrade, Montana, in the course and scope of her employment for Edgewood Vista Senior Living LLC ("Edgewood"). Through no fault of her own, she was negligently struck from the rear by another vehicle, causing injuries that impaired her ability to work. Progressive Insurance Company, the tortfeasor's insurer, paid Leys the $50,000 limits and Leys released the vehicle's driver and owner from liability.

Defendant Employers Insurance Company of Wausau insured the Edgewood automobile Leys was driving. Leys was an insured under that policy and she seeks underinsured motorist coverage under it.

---

[1] For the same reasons, there is no need to certify a question of law to the Montana Supreme Court.

[2] The following facts are taken nearly verbatim from the parties Agreed Stipulated Facts. *Doc. 16.*

The Wausau policy contains an endorsement titled "Montana Underinsured Motorists Coverage – Non-Stacked," that contains the following general promise to pay benefits: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the underinsured motor vehicle."

Paragraph D(2) of the "Montana Underinsured Motorists Coverage–Non-Stacked," endorsement states in pertinent part as follows: "We will not pay for any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' under any workers' compensation, disability benefits or similar law." The term "loss" is defined as: "direct and accidental loss or damage."

Wausau also provided worker's compensation insurance to Edgewood and Leys properly received payment under that insurance. Wausau paid Leys for medical expenses incurred for treatment of injuries she allegedly sustained in the accident and wage losses sustained due to her claimed inability to work following the accident. As of January 5, 2011, those benefits total: $61,802.65 in medical benefits and $69,087.44 in wage benefits. Payments are continuing.

Wausau has agreed that it will not exercise any right of subrogation against Leys under its workers compensation coverage to recover any payments it makes under the underinsured motorist coverage.

### III. ANALYSIS

The parties' motions for partial summary judgment require the Court to determine whether the provision limiting payment for losses also covered by worker's compensation is enforceable. Since the interpretation of an insurance contract is a question of law for the court to decide, the validity of the workers's compensation provision is appropriate for summary judgment. *See Newbury v. State Farm Fire & Casualty Ins. Co. Of Bloomington, Illinois,* 184 P.3d 1021, 1024 (Mont. 2008). Where, as here, the policy language is unambiguous, Montana Courts must enforce it as written, *Montana Petroleum Tank Release Compensation Bd. v. Crumleys, Inc.*, 174 P.3d 948, 957 (Mont. 2008), unless, as Leys claims, it violates public policy. *Youngblood v. American States Ins. Co.*, 866 P.2d 203, 205 (Mont. 1993).

Wausau claims its worker's compensation offset provision is perfectly lawful and therefore any recovery Leys obtains from Wausau under the UIM coverage must be reduced by the worker's compensation benefits Wausau has already paid. Leys argues this provision is illegal and contrary to the public policy

4

of Montana.

Although Leys makes numerous arguments against the worker's compensation provision, its validity is clear in light of two statutes governing "motor vehicle liability policies" and the Montana Supreme Court's decision in *Newbury v. State Farm Fire & Casualty Ins. Co. Of Bloomington, Illinois,* 184 P.3d 1021 (Mont. 2008), a case this Court has previously relied on in rejecting arguments very similar to Leys's. *See Bolin v. Allstate Indem. Co.,* 2010 WL 4286357 (D. Mont. 2010); *Gettle v Property & Casualty Insurance Company of Hartford, Doc. 17,* CV-09-43-BU-RFC (D. Mont. Feb. 9, 2010).

With respect to the two statutes authorizing the worker's compensation offset provision, it is well-established that legislative enactments are a primary source of public policy. *First Bank (N.A.)-Billings v. Transamerica Ins. Co.,* 679 P.2d 1217, 1219 (Mont. 1984). The first statute, Mont. Code Ann. § 33-23-203(2), provides:

> A motor vehicle liability policy may also provide for other reasonable limitations, exclusions, reductions of coverage, or subrogation clauses that are designed to prevent duplicate payments for the same element of loss under the motor vehicle liability policy or under another casualty policy that provides coverage for an injury that necessitates damages or benefit payments or to prevent the adding together of insurance coverage limits in one policy or from more than one policy issued by the same company.

As used in § 33-23-203(2), the term "motor vehicle liability policy" means "a policy of automobile or motor vehicle insurance against liability required under Title 61, chapter 6, parts 1 and 3, and all additional coverages included in or added to the policy by rider, endorsement, or otherwise, whether or not required under Title 61, including, without limitation, uninsured, underinsured, and medical payment coverages." Mont. Code Ann. § 33-23-204(2). Leys claims the worker's comp offset is not a "reasonable limitation" because it conflicts with the collateral source rule, codified at Mont. Code Ann. § 27-1-308, and the worker's compensation subrogation statute, at § 39-71-414. But we are not dealing with the collateral source rule, nor, as discussed below, is this a subrogation provision, and even if it was, Wausau has waived any rights it has to subrogate.

More importantly, the second statute, § 61-6-103(4), disproves any claim that the worker's compensation offset provision is contrary to Montana public policy:

> A motor vehicle liability policy need not insure any liability under any workers' compensation law or any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured or while engaged in the operation, maintenance, or repair of a motor vehicle or any liability for damage to property owned by, rented to, in charge of, or transported by the insured.

Leys argues § 61-6-103(4) is inapplicable here because underinsured motorist

coverage does meet the definition of "motor vehicle liability policy." For purposes of § 61-6-103(4), "motor vehicle liability policy" is defined as "a policy of insurance issued or renewed by an insurer to a person who owns or operates a motor vehicle that meets or exceeds the minimum coverage limits ..." Mont. Code Ann. § 61-6-102(6). Contrary to Leys's construction, the definition plainly refers to a "policy of insurance," which means a document containing a contract of insurance, *Black's Law Dictionary* 1276 (Bryan A. Garner ed., 9th Ed., West 2009), and not individual coverages within a policy. Further, there is no claim that the Wausau policy does not meet or exceed the minimum coverage limits. Accordingly, § 61-6-103(4) is applicable and expressly authorizes the worker's compensation offset provision.

Nonetheless, Leys cites *Farmers Alliance Mut. Ins. Co. v. Holeman*, 924 P.2d 1315, 1318 (Mont. 1996), for the proposition that the underinsured motorist coverage is not included within the definition of "motor vehicle liability policy" as that term is used in § 61-6-103(4). The *Holeman* Court was determining whether § 33-23-203 prohibited the stacking of "optional" coverages, such as medical payment and underinsured motorist coverages. 924 P.2d at 1317. In order to do so, the Court needed to determine whether the term "motor vehicle liability policy," as used in § 33-23-203, included medical payment and underinsured

7

motorist coverage. In determining that it did not, the Court relied on the fact that "underinsurance and medical payment [coverages] do not qualify as insurance *against liability*." 924 P.2d at 1315 (Mont. 1996) (emphasis in original). Since underinsured motorist and medical payment coverage were excluded from the definition of "motor vehicle liability policy, " and § 33-23-203 applied only to a "motor vehicle liability policy," the anti-stacking provisions of § 33-23-203 did not apply to underinsured motorist and medical payment coverage. *Id.*

Leys argues the *Holeman* Court's exclusion of underinsured motorist coverage from the definition of "motor vehicle liability policy" applies to "motor vehicle liability policy" as that term is used in § 61-6-103(4). But the definition of "motor vehicle liability policy" that is relevant to § 61-6-103(4) is found at Mont. Code Ann. § 61-6-102(6). Neither one of these sections were mentioned in *Holeman,* as *Holeman* involved the definition of motor vehicle liability policy relevant to § 33-23-203, which was, and still is, codified at § 33-23-204(2).

More importantly, in determining that underinsured motorist coverage was not insurance against liability, and therefore not a "motor vehicle liability policy," the *Holeman* Court was relying on the 1996 version of § 33-23-204(2). In 1996, for purposes of § 33-23-203, "Motor vehicle liability policy" meant "any policy of automobile or motor vehicle insurance against liability now or hereafter required

8

under Title 61, chapter 6, parts 1 and 3." Mont. Code Ann. § 33-23-204(2) (1996). After the *Holeman* opinion, the 1997 Montana Legislature amended the definition of motor vehicle liability policy to the current definition, which expressly includes "all additional coverages included in or added to the policy by rider, endorsement, or otherwise, whether or not required under Title 61, including, without limitation, uninsured, underinsured, and medical payment coverages." Mont. Code Ann. § 33-23-204(2) (2009).[3] Accordingly, even if the definition of "motor vehicle liability policy" found at § 33-23-204(2) was relevant to §61-6-103(4), *Holeman's* statement that underinsured motorist coverage is not a "motor vehicle liability policy" was overruled by the 1997 legislature.

Accordingly, since the worker's compensation offset provision is authorized by two statutory provisions, it does not violate the public policy of Montana. This holding is confirmed by *Newbury v. State Farm Fire & Cas. Ins. Co.*, which cites § 61-6-103(4)[4] for the proposition that "Montana law expressly relieves insurers of any legal obligation to include in their automobile policies a provision of

---

[3] Since 1997, § 33-23-204(2) has defined "motor vehicle liability policy" as "a policy of automobile or motor vehicle insurance against liability required under Title 61, chapter 6, parts 1 and 3, and all additional coverages included in or added to the policy by rider, endorsement, or otherwise, whether or not required under Title 61, including, without limitation, uninsured, underinsured, and medical payment coverages."

[4] In 2008, when *Newbury* was decided, the workers compensation provision was codified at Mont. Code Ann. § 61-6-103(5), rather than § 61-6-103(4) as it is now.

indemnity against employment-related harm." 184 P.3d 1021, 1029 (Mont. 2008).

*Newbury* presented the Montana Supreme Court with facts and legal questions strikingly similar to those at issue here. Newbury was struck by a vehicle while working. Over a period of three years, the State Worker's Compensation Insurance Fund paid $17,230.00 of his $18,405.80 in medical expenses, leaving him to pay the remaining $1,175.80. 184 P.3d at 1023.

Newbury was covered by two State Farm auto insurance policies for two different vehicles. Each policy provided $5,000 in medical payments coverage, which applied if he sustained bodily injury from being struck by a vehicle. Since he paid premiums for medical payments coverage in both policies, the $5,000 limits could be stacked. The policies expressly excluded coverage "to the extent workers' compensation benefits are required to be payable." 184 P.3d at 1023.

Newbury filed a claim with State Farm for the full $10,000 in medical payments coverage. State Farm paid the remaining $1,175.80 in medical payments not covered by worker's comp, but refused to pay the full $10,000 because of the worker's compensation exclusion. With the $1,175.80 payment from State Farm, Newbury had been fully compensated for his medical bills. *Newbury,* 184 P.3d at 1023.

Newbury then filed a lawsuit seeking a declaratory judgment that the

worker's compensation provision was void as against public policy. The parties stipulated to the facts and filed cross-motions for summary judgment. The district court ruled in favor of State Farm, concluding that the worker's compensation provision did not violate Montana public policy and was enforceable. *Newbury,* 184 P.3d at 1024.

After concluding the worker's compensation provision was unambiguous, the Montana Supreme Court considered whether the worker's compensation provision violated public policy (1) by violating Newbury's reasonable expectations and (2) by defeating coverage for which valuable consideration had been paid. *Newbury,* 184 P.3d at 1027-1029. Significant to the instant case, the Court noted that "[i]n Montana, parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory, coverage." *Newbury,* 184 P.3d at 1027. Since the only coverages mandated by Montana law are bodily injury and property damage liability coverage, the parties were free to contract for exclusions from coverage. *Newbury,* 184 P.3d at 1027-28. Further, because the policy language clearly expressed an intent to exclude coverage to the extent worker's compensation benefits are required to be payable, Newbury's expectation for medical payment coverage above and beyond his actual unpaid bills was

objectively unreasonable, and therefore the provision did not violate public policy. *Newbury,* 184 P.3d at 1028.

In addressing Newbury's claim that the worker's compensation provision denied coverage for which he had paid valuable consideration in violation of public policy, the Court cited § 61-6-103(4) for the proposition that Montana law expressly relieves insurers of any legal obligation to include in their automobile policies a provision of indemnity against employment-related harm."   *Newbury,* 184 P.3d at 1029.   Since the worker's compensation offset provision was unambiguous, and Newbury received exactly what he bargained for–payment of medical expenses to the extent they were not paid by worker's compensation–the provision did not violate public policy by defeating coverage for which valuable consideration had been paid.  *Id.*

Just like in *Newbury,* Wausau's policy language clearly and unambiguously provides Wausau will not pay for losses if the person is entitled to be paid by worker's compensation for the same loss.  Under *Newbury,* such a provision is perfectly lawful.

Similar to the plaintiffs in *Gettle* and *Bolin,* Leys urges the Court to ignore *Newbury* and follow *Blue Cross & Blue Shield of Montana, Inc. v. Montana State Auditor,* which held that 218 P.3d 475 (Mont. 2009).  First, *Blue Cross* involved

health insurance, whereas *Newbury* involved the interplay between auto insurance and worker's compensation, just like the instant case. As this Court noted in *Gettle,* "a reading of the Blue Cross Blue Shield case reflects that the Montana Supreme Court limited its holding by concluding that the Blue Cross' health insurance language was in direct violation of statutes regulating health service corporations and thus a violation of public policy." *Doc. 17, p. 16,* CV-09-43-BU-RFC. In this case, the worker's compensation provision is authorized by two statutes. Second, *Blue Cross* did not involve an actual dispute between insured and insurer, but addressed whether the insurance commissioner had the statutory authority to disapprove Blue Cross's policy language. Finally, the *Blue Cross* decision addressed subrogation, whereas here, like *Bolin* and *Gettle,* we are concerned with an offset provision–an exclusion from coverage. *See Blue Cross & Blue Shield of Montana, Inc.,* 218 P.3d at 481-83 (Rice, J. dissenting) (addressing the distinction between subrogation and coverage exclusions); *Bolin,* 2010 WL 4286357 at * 5-7; *Gettle, Doc. 17 at pp. 11-17*.

Accordingly, since the worker's compensation offset provision is not against the public policy of Montana, this Court must enforce it as written.
///

## **IV.**   **ORDER**

For those reasons, **IT IS HEREBY ORDERED** that Leys's Motion for Partial Summary Judgment (*Doc. 17*) is **DENIED** and Wausau's Motion for Partial Summary Judgment (*Doc. 14*) is **GRANTED**: Wausau is not required to pay the same elements of loss under its UIM coverage as it has paid under the worker's compensation coverage.

Dated this 30th day of March, 2011.

    _/s/ Richard F. Cebull_____
    Richard F. Cebull
    United States District Judge